## CITY OF ELMIRA *v.* MAPLE-AVE. R. CO.

(*Supreme Court, General Term, Fourth Department.* January 19, 1889.)

HORSE AND STREET RAILROADS—FRANCHISE—OCCUPATION OF STREET.

   A municipality sold to a street railroad company, for value, the right to construct a street railroad from the road of a railroad company along a route specified, the company being allowed one year to complete its road. Its track, as constructed, terminated 12 feet from the track of the railroad company instead of extending to it, but this space would be occupied by the part of the car forward of the forward truck, and the horses. The cars were stopped at the end of the track, the horses were transferred to the other end of the car, and the car and horses remained there in the street, until the time for beginning the trip. If the rails were carried to the railroad track, they would connect nearly on the line of the street. The street was 65 feet wide, 44 feet between the curbs, and was one of the principal thoroughfares. In an action brought within the year to restrain such use of the road, and the making of the terminus at the place mentioned, and waiting there to change horses and take passengers, *held,* that the municipality was not entitled to such relief.

Appeal from special term, Chemung county.

Action by the city of Elmira against the Maple-Avenue Railroad Company. Complaint dismissed, and plaintiff appeals.

Argued before FOLLETT, P. J., and KENNEDY and MARTIN, JJ.

*H. H. Rockwell,* for appellant. *D. C. Robinson,* for respondent.

KENNEDY, J. The plaintiff is a municipal, and the defendant a domestic, corporation. The latter was incorporated and organized for the purpose of constructing and operating a street railroad upon and over certain streets in the former. About June 30, 1887, the common council of said city, for a valuable consideration paid, sold to the defendant, as by statute in such case provided, the right to construct and operate a street railroad on the surface of the soil, and upon the planking of Lake-Street bridge, through, along, and upon Lake street, from the intersection of the north line of Water street to the Elmira & Horseheads Railroad Company's road, at the north end of Lake-Street bridge, so called; and upon, along, and across the Lake-Street bridge and its approaches; and along and upon Maple avenue, to the city line of said city; and also to construct such switches, sidings, turn-tables, and suitable stands as might be necessary for the convenient working of said road; together with the consent of the common council for it to occupy said streets for such purpose for the term of 99 years. By the terms of the contract and grant, the defendant was to have one year from June 20, 1887, to construct and complete said road. The defendant, after such purchase, commenced immediately to construct a road upon and over the route above indicated, laying the track through Lake street, north, to a point within 12 feet of the rail of the Elmira & Horseheads Railroad Company's track, instead of to said track, as provided by said grant. The defendant commenced to use and operate the road about September 1, 1887, and has so continued from that time to the present. East Water and Lake streets, and Lake-Street bridge are three of the principal thoroughfares in the city of Elmira, and they connect at or near the point of termination of the defendant's track. About one mile of track

has been laid by the defendant, and is in operation; and it would seem that the cars were run upon ordinary time, and in the usual manner. When a car, in its regular trips, reached the end of the track at the intersection of East Water and Lake streets, and at the point within 12 feet of the track of the Elmira & Horseheads road, it stopped at the end of the rails; the horses were unhitched from the north end of the car, driven to the south end, and hitched thereto; and the car and horses stood there in the street until the time arrived when it was to begin its regular trip. If the defendant's rail had been laid to the Horseheads railroad track, it would have connected with it nearly on the north line of Water street. This street is 44 feet wide between the curbs of the sidewalks. These on the north side are 11 feet wide, and on the south 10; so that at the point where Lake street crosses Water street, and where the defendant's track ends, the street is 65 feet wide. While the defendant's car was waiting for time and passengers, as before stated, so much of Water street as was taken up by the length of the car and horses was occupied by it. There is no evidence in the case showing that the time the cars were so standing was unusual, or not necessary for the proper operation of its road by the defendant. Usually, in smaller cities, as observation informs us, horse-cars do not run continuously, but at stated intervals, and hence from necessity have fixed places of rest, which fact may be fairly presumed to have been known to the plaintiff at the time the right to construct and operate the road was sold by it to the defendant.

This action is brought to restrain the defendant from operating and using said road in the manner above stated, and from making its terminus at the place aforesaid, and waiting there to change horses, and to take up passengers. By the sale of the rights, franchise, and privilege of using the streets, roads, avenues, and bridges, together with the consent of the mayor and common council of said plaintiff for the construction, maintenance, operation, and use of the railroad, substantially in accordance with the route, map, and survey referred to in the notice of sale, the city of Elmira, for a valuable consideration paid to it, vested the defendant with the right to construct and maintain its road, together with the right to use the streets over which the track was laid, for the purpose of operating its said road in the ordinary manner that roads of this character are used. A part of the contract between the parties was that these rights and privileges were to be secured to the defendant, with the undertaking on its part that they were to be exercised in a manner best calculated to incommode the public in the use of said streets the least. Among those granted was the right, at the termination of any track laid by it, to stop both car and horses, for such reasonable time for rest and to receive passengers, and run in connection with other cars passing over the same route, as might be necessary; and in the exercise of the right thus conferred, in the manner suggested, the defendant incurred no liability to the plaintiff or to the public which it could enforce. The accuracy of these suggestions we do not think can be successfully controverted, nor do we understand the counsel for the appellant to seriously question them. The claim on its part is that defendant failed to continue its rails so as actually to connect with those of the Elmira & Horseheads Railroad Company, and because of this that the defendant's car, when at rest at that place, extends further into the street than it otherwise would, and created an obstruction in the nature of a nuisance, to the detriment of the public. As the car of the defendant reached the end of its rails, there was a space of 12 feet between that and the Elmira & Horseheads track. This space was in the street, and occupied by that part of the car extending forward from the forward truck, together with the horses. These two would fill the space, so that to go further without the consent of the Horseheads Railroad Company would be a trespass upon its rights and property. This road has never given its consent that the defendant might occupy any part of its track. In the ab-

sence of this right secured to it, and with the knowledge on the part of the plaintiff at the time it sold the franchise that an actual connection could not be made of these two roads without such right in some legal manner acquired, it seems to us that the defendant's track at this point was laid, and that it terminated at the point, and in the manner substantially, as was required by the contract, and as was contemplated by the contracting parties. Again, the plaintiff knew at the time the franchise was sold by it to the defendant that the point in question would be one of the termini of its track, and that it was consequently likely to be, for a longer or shorter time on each trip, a resting place for its car. The inconvenience likely to result therefrom, if any, was or ought to have been considered by it at the time it exposed the franchise for sale, and, if objectionable, provision made to remedy the evil.

From the case it is quite apparent that the stopping of the car at the place mentioned, resulted, at most, in some little inconvenience to the public; but that their rights were seriously interfered with does not seem entirely apparent. In the absence of a right secured to the defendant to enter upon the track of the Elmira & Horseheads Company's track, if it shall be prohibited by injunction or otherwise from stopping its car for a reasonable time at that point, it is not difficult to see that the value of the franchise and rights purchased will be considerably impaired. The complaint of the plaintiff is that the defendant has failed to perform its part of the agreement, because it has not laid its rails over this 12-feet space. By the contract the defendant had one year from June 20, 1887, to complete its road. The year had not expired at the time this action was commenced. The defendant, therefore, was not in fault, since the omission to lay this part of the rails must be regarded as temporary. It will not be inferred that it will not, in due time, perform. 1 High, Inj. §§ 632, 633. The evil complained of, if it existed, was not one to be abated as a nuisance, or to be remedied by injunction. If the defendant failed to lay its tracks and to operate its road within the time and in the manner substantially as it was required to, or if, in the management of its cars, it unlawfully occupies or obstructs the public streets, the remedy is in the one case by proceeding on behalf of the public by the attorney general to annul and forfeit its franchise, and the other by indictment or proceedings under the statute. *Moore* v. *Railroad Co.*, 108 N. Y. 98, 15 N. E. Rep. 191. The only claim in the complaint upon which the plaintiff rests its right to the extraordinary remedy sought is that the defendant, in operating its road, made its termini in the center of the junction of East Water and Lake streets, and, as stated in the complaint, has waited there to change horses and take up passengers, to the great and unnecessary obstruction of public travel, and to the continued injury of the public in the use of said highways. This averment relates simply to the manner the defendant runs and operates its road, and charges an obstruction in the highway, bringing the case within the principle of the *Moore Case, supra.* If the remedy sought in this action is to be adjudged, then for a trifling departure from the exact terms of the contract, or for any interference with public travel, however slight, valuable rights acquired may be greatly injured, if not absolutely destroyed. We have examined the several questions presented by the appellant, both upon the refusal of the court to find certain propositions submitted and to the rulings upon the trial, and find nothing in them which calls for a reversal of the judgment. Judgment affirmed, with costs. All concur.